**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **TERESA HUFFMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 12-1192-JWL** |
| **CAROLYN W. COLVIN,[1]** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability(SSD) benefits and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Commissioner's final decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

## I.     Background

_____

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for SSD and SSI in August, 2009, alleging disability beginning May 15, 2005. (R. 10, 129-42). The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 10, 73-76, 93-99).[2] Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ James Harty on November 17, 2010. (R. 10, 29-31). At the hearing, testimony was taken from Plaintiff and from a vocational expert, and Plaintiff amended her alleged onset date to January 1, 2008. (R. 10, 36, 29-72). On February 15, 2011, ALJ Harty issued his decision. (R. 10-23). He determined that Plaintiff had engaged in substantial gainful activity after her amended alleged onset date between February and June, 2009, but not thereafter. (R. 12). He determined that Plaintiff has severe impairments of status post four back surgeries, and chronic pain, but that her insomnia, obesity, carpal tunnel syndrome, gastroenteritis, hypertension, anxiety, and depression are not severe impairments within the meaning of the Act. (R. 13-14).

The ALJ determined that Plaintiff has the RFC for a range of sedentary work limited by the need to alternate sitting and standing, and only occasionally to push or pull with the lower extremities, and by other significant postural, environmental, and mental limitations. (R. 15). He determined Plaintiff's allegations of symptoms resulting from her impairments are not credible. (R. 16-18). He evaluated the medical opinions of Dr.

---

[2]The court is unable to locate a Request for Hearing form in the record, but there is a Request for Hearing Acknowledgment Letter, recognizing that Plaintiff submitted a Request for Hearing. (R. 93-99).

Peloquin, Dr. Malik, Dr. Hsu, and Dr. Goering, and accorded them limited weight, little weight, some weight, and substantial weight, respectively. (R. 19-21). He determined that Plaintiff is unable to perform any of her past relevant work, but that when considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the economy that Plaintiff can perform, represented by jobs such as administrative support worker, order clerk, production checker, and wire wrapper. (R. 22-23). He concluded that Plaintiff is not disabled within the meaning of the Act, and denied her applications. (R. 23).

Plaintiff requested review of the ALJ's decision by the Appeals Council, and submitted a Representative Brief detailing the bases for requesting review. (R. 6, 320-21). The Council issued an order making the Representative Brief a part of the administrative record, and considered that brief in deciding whether to grant review. (R. 1-2, 4). The Council found that the brief did not provide a basis for changing the ALJ's decision, found no reason under the rules of the Social Security Administration to review the decision, and denied Plaintiff's request for review. (R. 1-2). Therefore, the ALJ's decision became the final decision of the Commissioner; (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006); and Plaintiff now seeks judicial review of that decision. (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act. Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048,

1052 (10th Cir. 2009) (same); <u>Brandtner v. Dep't of Health and Human Servs.</u>, 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)). Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the plaintiff was a party. It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084 (10th Cir. 2007); <u>accord</u>, <u>White v. Barnhart</u>, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Wall</u>, 561 F.3d at 1052; <u>Gossett v. Bowen</u>, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting <u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>accord</u>, <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005).

When deciding if substantial evidence supports the ALJ's decision, the mere fact that there is evidence in the record which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's

choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and noting that "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is disabled only if she can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months. Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084. The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. § 404.1520 (2010);[3] <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). <u>Williams</u>, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. <u>Id.</u>

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of

[3]Because the Commissioner's decision was issued on February 15, 2011, all citations to the Code of Federal Regulations in this opinion refer to the 2010 edition of 20 C.F.R. Parts 400 to 499, revised as of April 1, 2010, unless otherwise indicated.

past relevant work.  <u>Blea</u>, 466 F.3d 903, 907 (10th Cir. 2006); <u>accord</u>, <u>Dikeman v. Halter</u>, 245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  <u>Id.</u>; <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in this case at step two of the process by determining that right carpal tunnel syndrome and obesity are not severe impairments within the meaning of the Act, and erred in his RFC assessment by incorrectly evaluating the credibility of Plaintiff's allegations of symptoms and by discounting the medical opinion of Dr. Peloquin, her treating physician.  The Commissioner argues that the ALJ properly evaluated Plaintiff's right carpal tunnel syndrome and obesity, and that substantial evidence supports the RFC assessed by the ALJ, including his evaluation of Dr. Peloquin's treating source opinion and his evaluation of the credibility of Plaintiff's allegations.  The court finds no error in the decision at issue.  It usually addresses issues raised by claimants in the order they would be reached in applying the sequential evaluation process.  However, because the ALJ's credibility determination in this case affected the step two evaluation of Plaintiff's right carpal tunnel syndrome and obesity, the court begins with review of the ALJ's credibility determination.

## III.    The Credibility Determination

Plaintiff claims the ALJ applied the incorrect legal standard in his credibility determination and thereby failed to provide a reason to reject Plaintiff's testimony regarding the effects of right carpal tunnel syndrome and her testimony regarding the side

effects of medication.  (Pl. Br. 24-28).  The Commissioner argues that the ALJ properly

discounted the credibility of Plaintiff's allegations.  The Commissioner argues that the

medical evidence doesn't support Plaintiff's allegations, that Plaintiff's medication

improved her symptoms, that Plaintiff continued to work for nearly three years <u>after</u> her

original alleged onset date, that while Plaintiff was seeking disability she applied for

unemployment insurance and certified that she was willing and able to work, and that

Plaintiff's allegations are inconsistent with her activities of daily living.  (Comm'r Br. 10-

13).

### A.     Standard for Evaluating the ALJ's Credibility Determination

The court's review of ALJs' credibility determinations is deferential.  Their

credibility determinations are generally treated as binding on review.  <u>Talley v. Sullivan</u>,

908 F.2d 585, 587 (10th Cir. 1990); <u>Broadbent v. Harris</u>, 698 F.2d 407, 413 (10th Cir.

1983).  "Credibility determinations are peculiarly the province of the finder of fact" and

will not be overturned when supported by substantial evidence.  <u>Wilson</u>, 602 F.3d at

1144; <u>accord</u> <u>Hackett</u>, 395 F.3d at 1173.  Therefore, in reviewing the ALJ's credibility

determinations, the court will usually defer to the ALJ on matters involving witness

credibility.  <u>Glass v. Shalala</u>, 43 F.3d 1392, 1395 (10th Cir. 1994); <u>but see</u> <u>Thompson v.</u>

<u>Sullivan</u>, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule").

"However, '[f]indings as to credibility should be closely and affirmatively linked to

substantial evidence and not just a conclusion in the guise of findings.'"  <u>Wilson</u>, 602

F.3d at 1144 (quoting <u>Huston v. Bowen</u>, 838 F.2d 1125, 1133 (10th Cir. 1988)); <u>Hackett</u>,

395 F.3d at 1173 (same).

The Tenth Circuit has explained the analysis for evaluating subjective testimony

regarding symptoms.  <u>Thompson</u>, 987 F.2d at 1488 (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to
> establish disability.  Before the ALJ need even consider any subjective
> evidence of pain, the claimant must first prove by objective medical
> evidence the existence of a pain-producing impairment that could
> reasonably be expected to produce the alleged disabling pain.  This court
> has stated:  The framework for the proper analysis of Claimant's evidence
> of pain is set out in <u>Luna v. Bowen</u>, 834 F.2d 161 (10th Cir. 1987).  We
> must consider (1) whether Claimant established a pain-producing
> impairment by objective medical evidence; (2) if so, whether there is a
> "loose nexus" between the proven impairment and the Claimant's
> subjective allegations of pain; and (3) if so, whether, considering all the
> evidence, both objective and subjective, Claimant's pain is in fact disabling.

In evaluating credibility, the <u>Luna</u> court noted a list of factors the Tenth Circuit

had recognized which should be considered in credibility determination, and recognized

that the Secretary of Health and Human Services had also noted several factors for

consideration.  <u>Luna</u>, 834 F.2d at 165-66 (citing <u>Polaski v. Heckler</u>, 751 F.2d 943, 948

(8th Cir. 1984), <u>judgment vacated on other grounds sub nom</u> <u>Bowen v. Polaski</u>, 476 U.S.

1167 (1986)).  The <u>Luna</u> court recognized that "no such list can be exhaustive."  <u>Id.</u> at

166.  The factors recognized by courts in the Tenth Circuit include:

> the levels of medication and their effectiveness, the extensiveness of the
> attempts (medical or nonmedical) to obtain relief, the frequency of medical
> contacts, the nature of daily activities, subjective measures of credibility
> that are peculiarly within the judgment of the ALJ, the motivation of and
> relationship between the claimant and other witnesses, and the consistency
> or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at

1489). Subsequent to Luna and Polaski, the Secretary promulgated regulations

explaining factors considered in evaluating credibility which overlap and expand upon the

factors stated by the court: Daily activities; location, duration, frequency, and intensity of

symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness,

and side effects of medications taken to relieve symptoms; treatment for symptoms;

measures plaintiff has taken to relieve symptoms; and other factors concerning limitations

or restrictions resulting from symptoms. Evaluation of Symptoms, Including Pain, 56

Fed. Reg. 57,928, 57,941-43, 57,944-46 (Nov. 14, 1991) (codified at 20 C.F.R.

§§ 404.1529, 416.929).

### B.     The ALJ's Credibility Determination

The ALJ explained that he had considered Plaintiff's symptoms "based on the

requirements of 20 CFR 404.1529 and 416.929 and SSRs [(Social Security Rulings)] 96-

4p and 96-7p." (R. 16). He then summarized the standard for evaluating credibility as set

out in the regulations and rulings, and stated his finding that "the claimant's statements

concerning the intensity, persistence and limiting effects of [her] symptoms are not

credible." (R. 16). Over the next three and one-half pages of his decision, the ALJ

discussed the evidence relating to his credibility determination and stated fourteen

reasons for discounting the credibility of Plaintiff's allegations. Id. at 16-19. Those

reasons are: (1) The degree of limitation alleged by Plaintiff is not well-supported by

objective medical evidence and examination findings; (2) after her most recent back

surgery, Plaintiff was able to return to substantial gainful activity (R. 16); (3) Plaintiff demonstrated greater range of motion when observed putting her shoes back on than she demonstrated during her examination (R. 17) (citing Ex. 6F at p.2 (R. 547)); (4) Although Plaintiff's gait is described as uncomfortable and antalgic, she testified she can ambulate without a cane; (5) Plaintiff has not provided evidence that the limitations she observes in her daily activities are medically necessary; (6) the severity of pain alleged by Plaintiff is not consistent with the reduction in her pain medication; (7) the severity of pain Plaintiff described to her treatment providers is inconsistent with the severity alleged in her testimony (R. 17); (8) Plaintiff testified to drowsiness and forgetfulness as medication side effects, but did not report memory or concentration difficulties in her function report; (9) Plaintiff's allegation that she must rest three to six times a day is not supported by record evidence of medical necessity; (10) Plaintiff worked during the period of alleged disability without taking three to six breaks a day to rest or recline; (11) during the period of time that she now alleges she was disabled, Plaintiff certified for unemployment compensation that she was willing and able to work; (12) Plaintiff testified that when receiving unemployment compensation she applied for sedentary jobs, thus suggesting an ability to perform sedentary work; (13) Plaintiff returned to work after each back surgery, and does not show that her medical condition has worsened thereafter; and (14) Plaintiff's last job ended for failure to follow company procedures, not because she was unable to do the work.  (R. 18).

## C.  Analysis

Plaintiff has not shown that the ALJ applied the incorrect legal standard to his credibility determination. Plaintiff quotes <u>Kepler</u> for the proposition that credibility findings must be affirmatively linked to substantial record evidence. (Pl. Br. 24). She argues that the ALJ must explain and support with substantial evidence the parts of Plaintiff's evidence he does not believe and why. <u>Id.</u> at 25 (citing <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1254 (10th Cir. 2002)). Finally, she quotes <u>White</u> for the proposition that the requirement that credibility findings be affirmatively linked to substantial evidence can only be met if the ALJ "sets forth the specific evidence he relies on in evaluating the claimant's credibility." <u>Id.</u> (quoting <u>White</u>, 287 F.3d at 909).

Plaintiff's argument appears to ignore the evidence discussed by the ALJ on pages 4-12 of his decision (R. 13-21) and the fourteen reasons given by the ALJ to discount the credibility of Plaintiff's allegations. (R. 16-19). With but one exception which will be addresses hereinafter, Plaintiff does not point to error in the evidence discussed by the ALJ, and does not argue that the fourteen reasons are erroneous. Rather, she points to her testimony regarding carpal tunnel syndrome and to her testimony that she has significant drowsiness and forgetfulness as side effects from her pain medications, and argues that the ALJ failed to provide adequate reasons to reject that specific testimony. Plaintiff appears to be working from the premise that the ALJ must provide an individual reason to discount <u>each</u> allegation made by a claimant, but she does not cite to authority for that premise. Moreover, the court is aware of no such authority.

The cases cited by Plaintiff will not carry the burden necessary for the premise suggested. As noted above, in eight pages of his decision the ALJ supported his credibility findings with substantial evidence from the record, as required by <u>Broadbent</u>, and set forth the specific evidence he relied upon as required by <u>White</u>. (R. 13-21). He affirmatively linked those findings to that evidence as required in <u>Kepler</u>, by discussing his fourteen reasons for discounting Plaintiff's allegations in two and one-half pages of that decision. (R. 16-19).

Although <u>McGoffin</u> does lend some support to Plaintiff's argument, even that case cannot carry the burden placed on it. In that case, the ALJ "relied upon the assessment of a consulting physician, Dr. George Blake, who examined Ms. McGoffin only once," and found that if Ms. McGoffin ceased her substance abuse "her remaining mental illness would not be severe enough to preclude work activity." <u>McGoffin</u>, 288 F.3d at 1253. The <u>McGoffin</u> court noted that "findings of a nontreating physician based upon limited contact and examination are of suspect reliability," noted that the record showed that Ms. McGoffin continued to have significant psychotic and affective symptoms after Dr. Blake examined her, and rejected the ALJ's finding, stating, "when the record is viewed as a whole, we are not persuaded Dr. Blake's assessment constitutes substantial evidence that Ms. McGoffin's mental disorders are not disabling absent her substance dependence." <u>Id.</u> 288 F.3d at 1254. It was only after the <u>McGoffin</u> court found this error in the ALJ's decision that it discussed the credibility determination, noted the deferential standard accorded to review of credibility determinations, and concluded in but two sentences:

13

The ALJ stated he found Ms. McGoffin not credible to the extent that her testimony conflicted with his conclusion that her mental illness alone was not disabling. The ALJ did not, however, explain and support with substantial evidence which of her testimony he did not believe and why.

Id.

While the ALJ in McGoffin did not explain and support with substantial evidence the allegations he did not believe and why, it is clear that here, as discussed above, the ALJ did so, and more is not required. Even McGoffin does not require that the ALJ provide an individual reason to discount each individual statement by Plaintiff. Once a witness has been determined to be not credible, the factfinder might properly find a particular testimony not credible even though there is no specific record evidence that the particular testimony is not credible. Weese v. Shukman, 98 F.3d 542, 547-48 (10th Cir. 1996) (factfinder may reject testimony from a witness it finds not credible); see also Neece v. IRS, 41 F.3d 1396, 1399-1400 (10th Cir. 1994) (judge sitting as a factfinder need not believe testimony of witness he finds not credible).

In her credibility argument, Plaintiff also argues that the ALJ misunderstood and misinterpreted her testimony regarding side effects of medication, and that this misunderstanding contributed to his error in failing to provide adequate reason to reject the testimony regarding side effects. (Pl. Br. 26-28). Plaintiff argues that she testified that she gets drowsiness and forgetfulness as side effects from taking her medication, and that, therefore, she must take three to six rest periods daily, lasting fifteen to twenty minutes each. (Pl. Br. 26) (citing R. 50, 58-60). She argues that the ALJ misunderstood

14

her testimony, mistakenly found that the rest periods were utilized by Plaintiff to relieve her pain, and found that because she worked without <u>rest periods to relieve her pain</u>, her allegations were not credible.  <u>Id.</u> at 27-28.

Plaintiff is correct that the ALJ related Plaintiff's rest periods to pain relief.  (R. 18).  However, neither the ALJ's discussion, nor Plaintiff's testimony was so unidimensional as Plaintiff's Brief suggests.  First, the ALJ acknowledged three times in the decision that Plaintiff alleged drowsiness and forgetfulness as side effects from her pain medication.  (R. 14, 18, 19).  This acknowledgment rests upon Plaintiff's testimony at the hearing that she takes methadone and percocet for her pain and that these medications cause her to experience side effects of drowsiness and forgetfulness.  (R. 49-50).  In addition to that discussion, the ALJ also discussed Plaintiff's alleged need for rest breaks in relation to her return to work full time at Tele-professionals in 2008.  (R. 28).  The significance of the ALJ's discussion in this regard was not so much that Plaintiff did not need breaks for pain relief (or for any other reason), but that her need for breaks was not shown to be medically necessary, and that during the period she allegedly needed three to six breaks each day to rest or recline, she worked without taking breaks to rest or recline but merely took extra bathroom breaks.  (R. 18).  Even assuming the ALJ misunderstood Plaintiff's testimony, that misunderstanding had no impact on the main point of his determination in this regard.

Moreover, the testimony upon which Plaintiff primarily relies for her argument that the ALJ misunderstood, tends to support the ALJ's understanding.  (R. 57-60).  This

testimony begins with Plaintiff's counsel asking about her pain specialist, Dr. Peloquin. (R. 57). He asked Plaintiff if the medication regimen she was on took the pain away so that she could work, and she responded that it did not. (R. 58). He asked, "Why do you say that," and Plaintiff responded, "Well, because I can't function - - well, it's because I get drowsy and I'm forgetful as well as the medicine doesn't take away the pain completely in my back. I mean I can't - - it just basically - - the pain medicine basically just helps me tolerate the pain." (R. 58). Counsel next asked what made the back pain worse, and explored what would happen if Plaintiff dropped something on the floor. (R. 59). Plaintiff explained she would leave it or maybe try to reach for it by bending very slowly, and stated that was "why I try and not drop anything if I can help it." (R. 59). Counsel next brought up Plaintiff's pain medication again:

> Q    Okay. Now you mentioned with the medication, that you rest periodically throughout the day.
>
> A    Yes.
>
> Q    Now what does that mean? Can you quantify that for me?
>
> A    I sit down or I sit in a recliner.
>
> Q    For how long on average?
>
> A    Maybe 15/20 minutes, just depends how -- just depends. Sometimes I'll sit longer than that, you know, just and I guess sometimes like when I'm watching TV, I'm resting also, I do fall asleep if I'm sitting there.
>
> Q    Okay. Now as far as in these periodic rests --
>
> A    Uh-huh.

Q      -- in an average day, how many rest periods do you use?

A      Well, sometimes I do three, sometimes I do up to five or six, it just depends on the day.

Q      Okay.

A      The weather affects me tremendously.  Like today is going to be a bad day.

Q      Why do you say that?

A      Because it's cold and it's wet.

Q      Now you mentioned that the furthest you can drive is about 20 miles.

A      Uh-huh.  Right.

Q      During that 20-mile drive to [Abilene], do you have to stop and take breaks?

A      No, but us I sh -- I probably should, but I don't.  So by the time I get there, I'm ready to get out of the truck, that's what he has, and I have got to walk around and move around a little bit because I'm usually pretty stiff.

(R. 59-60).  In context, the theme of this portion of counsel's examination of Plaintiff was pain and how it affects Plaintiff.  It is not entirely clear from the testimony that the alleged need to rest or recline was solely because of the side effects of medication.  In fact, it is a fair understanding of this testimony that the alleged need to rest or recline is because of both pain and the side effects of pain medication.  The ALJ's discussion in the decision addresses both bases.  Plaintiff has shown no fatal misunderstanding in the

ALJ's consideration of this testimony, and she has shown no error in the ALJ's credibility determination.

## IV.    The Step Two Evaluation

Plaintiff points to her "testimonial evidence regarding her carpal tunnel impairment" (Pl. Br. 14), and claims that "[d]espite Plaintiff's significant testimony, the ALJ erroneously concluded that Plaintiff failed to present evidence regarding the severity of the carpal tunnel syndrome," and "failed to provide a basis to reject Plaintiff's specific testimony regarding carpal tunnel impairment, and its related symptoms." Id. at 15. She argues that because the ALJ found she is limited to sedentary work, her difficulties with using her hands due to carpal tunnel syndrome establish an inability to perform most sedentary work, and meet the de minimis standard to establish carpal tunnel syndrome as a severe impairment. Id. at 16-17.

Plaintiff also argues that the ALJ failed to apply SSR 02-1p properly, in finding that her obesity is not a severe impairment. (Pl. Br. 19-20). She argues that the profound problems described in her testimony when considered in combination with her obesity cause a greater combined effect than without obesity. Id. at 21. She points to the ALJ's finding that she "has not presented evidence her obesity significantly limits her physical or mental ability to perform basic work activities," id. (citing R. 13), and argues that finding is erroneous because nurse-practitioner Dean Wentworth "determined that Plaintiff's positive antalgic gait was 'contributed to by her current obesity state and mild waddling during ambulation.'" Id. at 22 (quoting R. 590). Plaintiff argues that Mr.

18

Wentworth's statement constitutes evidence that obesity significantly limits her ability to perform basic work activities and demonstrates the error in the ALJ's finding that her obesity is not severe.  Id. at 22, 23.

The Commissioner argues that once a claimant shows any severe impairment or combination of impairments at step two of the sequential evaluation, it is irrelevant whether other of her impairments are severe because the ALJ must consider all of the claimant's impairments when he assesses RFC, not just those impairment he found severe.  (Comm'r Br. 4).  She argues that the mere presence of a condition is not sufficient to establish the condition as "severe" within the meaning of the Act.  Id. at 4-5. She then points to record evidence tending to support the ALJ's finding.

### A.    Step Two Standard

An impairment is not considered severe if it does not significantly limit plaintiff's ability to do basic work activities such as walking, standing, sitting, carrying, understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521, 416.921.  The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or combination of impairments at step two of the sequential evaluation process, plaintiff must make only a "de minimis" showing.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  Plaintiff need only show that an impairment would have more than a minimal effect on her ability to do basic work activities.  Williams, 844 F.2d 748, 751 (10th Cir. 1988).  However, she must show more than the mere presence of a

condition or ailment.  <u>Hinkle</u>, 132 F.3d at 1352 (citing <u>Bowen v. Yuckert</u>, 482 U.S. 137,

153 (1987)).  If an impairment's medical severity is so slight that it could not interfere

with or have a serious impact on plaintiff's ability to do basic work activities, it could not

prevent plaintiff from engaging in substantial work activity and will not be considered

severe.  <u>Hinkle</u>, 132 F.3d at 1352.

**B.      The ALJ's Step Two Fndings**

At his step two evaluation, the ALJ found that Plaintiff has severe impairments of

status post four back surgeries, and chronic pain, but that her obesity and carpal tunnel

syndrome are not severe impairments within the meaning of the Act.  (R. 12-13).  The

ALJ specifically discussed obesity and carpal tunnel syndrome:

> [T]he record indicates the claimant is obese.  (Exhibit 10F at p.10 [(R.
> 590)])  At her hearing, the claimant testified she is 5'3" and weighs 197
> pounds, but she indicated her weight does not affect her on a day to day
> basis other than impacting her self esteem.  The claimant's obesity was
> considered in terms of its possible effects on claimant's ability to work.
> Although obesity is no longer a listed impairment, SSR 02-01 provides
> important guidance on evaluating obesity in adult and child disability
> claims.  The Administrative Law Judge is required to consider obesity in
> determining whether a claimant has medically determinable impairments
> that are severe, whether those impairments meet or equal any listing, and
> determining the claimant's residual functional capacity.  Obesity is
> considered severe when, alone or in combination with another medically
> determinable physical or mental impairment(s), it significantly limits an
> individual's physical or mental ability to do basic work activities (SSR 02-
> 01).  However, the Administrative Law Judge will not make assumptions
> about the severity or functional effects of obesity combined with other
> impairments.  While obesity may or may not increase the severity or
> functional limitations of other impairments, each case will be evaluated
> solely on the information in the case record.  In the present case, the
> claimant has not presented evidence her obesity significantly limits her

physical or mental ability to perform basic work activities. Therefore, the claimant's obesity is considered non-severe.

The claimant has presented evidence of right carpal tunnel syndrome. Her nerve conduction test from March of 2005 revealed mild to moderate carpal tunnel syndrome. (Exhibit 16F [(R. 704-05)]) However, the claimant testified she did not require release surgery for her carpal tunnel syndrome and returned to work, engaging in substantial gainful activity, following this diagnosis. (Exhibit 4D, Exhibit 5D [(R. 146-85)]) The claimant has not presented evidence her subsequent work ended due to an inability to perform fine fingering or grasping. Because the claimant has not presented evidence her carpal tunnel syndrome significantly limits her ability to perform basic work-related activities, the claimant's carpal tunnel syndrome is considered non-severe.

(R. 13).

### C.    Analysis

Because the ALJ found that Plaintiff's allegations regarding the severity of her symptoms are not credible, and because Plaintiff has not shown error in the credibility determination, she cannot show error at step two predicated upon her testimony regarding either carpal tunnel or obesity. Plaintiff's only argument regarding carpal tunnel syndrome is based upon her "significant testimony" which in her view required a finding that carpal tunnel causes more than a minimal effect on her ability to perform basic work activities, and therefore meets the de minimis standard to establish carpal tunnel syndrome as a "severe" impairment within the meaning of the Act. As the ALJ found, Plaintiff worked at the level of substantial gainful activity despite her carpal tunnel syndrome, has not shown that the work ended because of the condition, and has shown no evidence beyond her own incredible testimony that carpal tunnel syndrome significantly

limits her ability to perform basic work activities. Plaintiff has shown no error in the step two finding that carpal tunnel syndrome is not a severe impairment.

With regard to obesity, as the ALJ noted, Plaintiff testified that she weighs 197 pounds but that her weight does not affect her on a day-to-day basis "except for my self esteem." (R. 52). Beyond her own testimony that she has "profound problems" with pain, with standing, walking, and sitting, and with "excessive and chronic fatigue," and which the ALJ found not credible, the only evidence to which Plaintiff appeals in arguing that obesity is a severe impairment in this case is the statement of her nurse-practitioner, Mr. Wentworth, that her "positive antalgic gait was 'contributed to by her current obesity state and mild waddling during ambulation.'" Id. at 22 (quoting R. 590). However, Plaintiff does not point to any more-than-minimal limitation in her ability to perform basic work activities caused by her antalgic gait or by her mild waddling during ambulation. In fact, Mr. Wentworth noted that Plaintiff was taking a computer course at night, that her systems were "positive for occasional fatigue, otherwise unremarkable," that she has no dyspnea (shortness of breath), and he noted no "sedation, lethargy or dyspnea." (R. 590). As the ALJ found, Plaintiff "has not presented evidence her obesity significantly limits her physical or mental ability to perform basic work activities." (R. 13). Plaintiff has shown no error in the ALJ's step two findings.

## V.    Evaluation of Treating Source Opinions

Finally, Plaintiff claims the ALJ erred by rejecting the opinion of her treating physician, Dr. Peloquin. She argues that the ALJ "failed to explain why Dr. Peloquin's

22

conclusion was not 'well supported by medically acceptable clinical and laboratory diagnostic technique,'" and failed to consider that record evidence which is consistent with the opinion. (Pl. Br. 30). The Commissioner argues that the ALJ properly evaluated Dr. Peloquin's opinion and that substantial record evidence supports that evaluation. (Comm'r Br. 8-9). In her Reply Brief, Plaintiff reiterates her "primary argument," that the ALJ failed to "explain why Dr. Peloquin's conclusion was not 'well supported by medically acceptable clinical and laboratory and diagnostic techniques,'" or to "consider the record evidence [which is] consistent with Dr. Peloquin's opinion as required by SSR 96-2p, and Robinson v. Barnhart," 366 F.3d 1078 (10th Cir. 2004). (Reply 4).

### A.    Standard for Evaluating Treating Source Opinions

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. §§ 404.1527(d), 416.927(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2013). A physician who has treated a patient frequently over an extended period of time (a treating source)[4] is expected to have greater insight into the patient's

_____

[4]The regulations define three types of "acceptable medical sources:"

medical condition, and his opinion is generally entitled to "particular weight."  Doyal v.

Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of

the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by

medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not

inconsistent with the other substantial evidence in [claimant's] case record, [the

Commissioner] will give it controlling weight."  20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15

(Supp. 2013) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating

source's medical opinion.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003)

(citing SSR 96-2p).  The ALJ determines "whether the opinion is 'well-supported by

medically acceptable clinical and laboratory diagnostic techniques'" and whether the

opinion is also consistent with the other substantial evidence in the record.  Id. at 1300

(quoting SSR 96-2p).  "[I]f the opinion is deficient in either of these respects, then it is

not entitled to controlling weight."  Id.

---

"Treating source:"  an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. §§ 404.1502, 416.902.

"Nontreating source:"  an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  Id.

"Nonexamining source:"  an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  Id.

If the treating source opinion is not given controlling weight, the inquiry does not end.  Id.  A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  Id.  Those factors are:  (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion.  Id. 350 F.3d at 1301.  "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so."  Id.  (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

Recognizing the reality that an increasing number of claimants have their medical care provided by health care providers who are not "acceptable medical sources"--nurse practitioners, physician's assistants, social workers, and therapists, the Commissioner

promulgated Social Security Ruling (SSR) 06-3p. West's Soc. Sec. Reporting Serv.,

Rulings 327-34 (Supp. 2013). In that ruling, the Commissioner noted:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

Id. Rulings, 330-31.

SSR 06-3p explains that such "other medical source" opinions will also be

evaluated using the regulatory factors used for evaluating medical opinions; id. at 331-32

(citing 20 C.F.R. §§ 404.1527, 416.927); and that the ALJ "generally should explain the

weight given to opinions from these 'other sources,' or otherwise ensure that the

discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to

follow the adjudicator's reasoning, when such opinions may have an effect on the

outcome of the case." Id. at 333; see also Frantz v. Astrue, 509 F.3d 1299, 1302 (10th

Cir. 2007) (remanding for consideration of a nurse-practitioner's opinions in light of SSR

06-3p).

### B.      The ALJ's Consideration of Dr. Peloquin's Medical Opinion

The ALJ considered Dr. Peloquin's treatment records, and discussed much of

those records in the decision. In discussing obesity in his step two analysis, the ALJ cited

Dr. Peloquin's treatment records. (R. 13) (citing Ex. 10F at10). He cited Dr. Peloquin's treatment records when he summarized Plaintiff's response to her last back surgery. (R. 16-17) (citing Exs. 3F at 14-15, 34-35; 4F at 13-14, 38-39; 10F at 5, 10; and 19F at 2). When discussing Plaintiff's description of her pain, the ALJ related that description to Dr. Peloquin's treatment records. (R. 17) (citing Exs. 3F at 13; 10F at 3, 9; and 13F at 4). The ALJ cited Dr. Peloquin's treatment records when he discussed the treatment employed by Plaintiff in seeking to relieve her pain. (R. 18) (citing Ex. 3F).

Finally, the ALJ summarized the two medical source statements completed by Dr. Peloquin. (R. 19-20) (citing Exs. 12F, 18F). He summarized the legal standard for weighing a treating source medical opinion, and then, in two paragraphs, he explained the weight he accorded to Dr. Peloquin's opinion:

> The claimant testified she has been treated by Dr. Peloquin since 2007 and sees him every two to three months. Dr. Peloquin provides pain management treatment for the claimant. However, the opinion has limited support from the record. While Dr. Peloquin's treatment notes state the claimant is disabled, Dr. Peloquin's notes do not document worsening since the claimant last worked. The claimant's objective and examination findings do not reflect significant worsening aside from the claimant's subjective complaints since the claimant's most recent surgery, yet the opinions from Dr. Peloquin are more restrictive than the claimant's demonstrated ability to work after this surgery. In November 2010, Dr. Peloquin indicated the claimant is unable to perform strenuous work, but would be unable to perform a sedentary job due to her inability to stay in one position for any length of time. (Exhibit 19F at p. 2 [(R. 726)]) However, at this examination, the claimant's gait was only mildly antalgic and Dr. Peloquin described the claimant's strength and sensation as intact. (Exhibit 19F at p. 2[(R. 726)]) The opinions of Dr. Peloquin also lack consistency. While both medical source statements account for less than a full 8 hour workday, they vary in many of the postural and environmental limitations though given only seven months apart. Though the variance is

27

not so disparate as to be conclusive, the inconsistency does not enhance the weight given to Dr. Peloquin's opinion.  As to specialty, Dr. Peloquin has not identified any other than pain management.

Considering these factors, the opinions of Dr. Peloquin are entitled to limited weight.  Some weight is given to Dr. Peloquin's assessment of the claimant's ability to stand throughout the workday, though his assessment of her ability to stand at one time is not supported.  The evidence as a whole reflects the claimant has been limited to a range of sedentary work since her most recent surgery and the claimant's own testimony confirms this is the type of work she has pursued since that time.  Thus, the limitation to two hours of standing is supported.  Likewise, the undersigned concurs the claimant should avoid crawling and also climbing as it pertains to ladders, ropes, or scaffold.  However, a limitation to occasional climbing of ramps and stairs is more appropriate given the claimant's ability to ambulate without an assistive device as well as enter and drive her fiance's truck. Otherwise, the restrictions assessed by Dr. Peloquin are not supported by the claimant's ability to return to work following her surgery with the absence of worsening after she stopped working.  Therefore, the opinion of Dr. Peloquin is afforded limited weight.

(R. 20-21).

## C.     Analysis

Contrary to Plaintiff's allegations, the court finds no error in the ALJ's application

of the standard for weighing treating source opinions.  Plaintiff's argument that the ALJ

erred because he "failed to explain why Dr. Peloquin's conclusion was not 'well

supported by medically acceptable clinical and laboratory diagnostic technique'" (Pl. Br.

30), ignores the significance of the standard for determining controlling weight.  As noted

above, a treating source opinion must be accorded controlling weight if it "is well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in [claimant's] case record."   20

C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (emphasis added).  However, as the Tenth

Circuit noted in Watkins, "if the opinion is deficient in either of these respects, then it is

not entitled to controlling weight."  350 F.3d at 1300 (emphasis added).  Plaintiff does not

even argue that Dr. Peloquin's opinion is "not inconsistent with the other substantial

evidence in [the] case record," and thereby acknowledges that one of the requirements for

controlling weight is not met.  Moreover, Plaintiff points to no record evidence which

requires a finding that Dr. Peloquin's opinion is well-supported by medically acceptable

clinical and laboratory diagnostic techniques.  She has shown no error in this regard.

As to Plaintiff's second allegation of error in weighing Dr. Peloquin's opinion, the

court is simply at a loss to ascertain the basis for that allegation.  Plaintiff asserts that "the

ALJ failed to consider the record evidence [which is] consistent with Dr. Peloquin's

opinion as required by SSR 96-2p, and Robinson v. Barnhart."  (Pl. Br. 30) (citing SSR

96-2p, and Robinson, 366 F.3d 1078).  The decision at issue, as quoted above, reveals

that the ALJ considered at least the record evidence which was consistent with Dr.

Peloquin's opinions that Plaintiff can stand two hours throughout the day, and that she

should avoid crawling or climbing ladders, ropes, and scaffolds.  (R. 20).  Beyond that,

there is no citation in Plaintiff's briefs to record evidence which is consistent with Dr.

Peloquin's opinion and which should have been, but was not, considered by the ALJ.

Moreover, Plaintiff does not explain in what way the requirements of SSR 96-2p or of

Robinson were violated, and there is no pinpoint citation in Plaintiff's briefs to a portion

of the Ruling or of the decision in Robinson, so that the court might ascertain the specific

error Plaintiff alleges.  Plaintiff is represented by counsel before this court, and the court will not make Plaintiff's arguments for her.  She has shown no error in the ALJ's evaluation of Dr. Peloquin's opinion.

In a final matter, the court notes that in her obesity argument at step two, Plaintiff claimed that the ALJ's failure to discuss Mr. Wentworth's opinion in the decision "was clear legal error."  (Pl. Br. 23).  Specifically, she argued that every medical opinion must be considered and weighed, and that it is clear legal error to ignore a medical opinion.  Id. The Commissioner points out that Plaintiff does not show any limitations caused by obesity which were suggested by Mr. Wentworth and which are greater than the limitations assessed by the ALJ.  (Comm'r Br. 8).  She concludes that "as a non-physician member of Dr. Peloquin's practice, Mr. Wentworth's statement is subject to the same objections that apply to Dr. Peloquin's RFC assessments."  Id.

As a preliminary matter, the court notes that Mr. Wentworth's opinion is not a "medical opinion" as defined in the regulations because Mr. Wentworth is not an "acceptable medical source."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); SSR 06-3p. Therefore, Plaintiff's argument that it is clear error to ignore a medical opinion is inapplicable here.  Nonetheless, "[o]pinions from these medical sources [(such as nurse practitioners)] . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  West's Soc. Sec. Reporting Serv., Rulings 331 (Supp. 2013).

But, it is apparent that the ALJ evaluated Mr. Wentworth's opinion. The ALJ cited the specific page of that opinion relied upon by Plaintiff when he found that she is obese. (R. 13) (citing Ex. 10F at 10). Moreover, the ALJ cited that page again, and also cited Mr. Wentworth's other treatment note, when he noted that Plaintiff's "gait is described as uncomfortable and antalgic." (R. 17) (citing Ex. 10F at 5, 10).

Thus, the main import of Plaintiff's argument can only be that the ALJ did not name nurse-practitioner Wentworth in the decision. There are two problems with this argument. First, Mr. Wentworth's notes are contained within a portion of Dr. Peloquin's treatment records. (R. 581-91) (Ex. 10F). As the Commissioner argues, Mr. Wentworth is a nurse-practitioner who clearly is supervised by Dr. Peloquin, and the ALJ admittedly evaluated Dr. Peloquin's treatment records, and explained the weight accorded to Dr. Peloquin's opinion.

Second, and perhaps most importantly, if it was error for the ALJ to treat Mr. Wentworth's treatment notes as Dr. Peloquin's treatment notes, that error was invited by Plaintiff's counsel at the administrative hearing. At the hearing, counsel was discussing Dr. Peloquin's treatment records and argued that Plaintiff's "obesity should be considered on top of the back problems because as in 10F, page 10, Dr. Peloquin clearly states that her weight contributes to her r[ad]icular symptoms and her back problems." (R. 35). The ALJ asked, "You say that's at 10F, page 10?" (R. 36). Counsel responded, "That's correct. It was a visit on February 16th of 2010." Id. As is noted several times in Plaintiff's Brief, and contrary to counsel's specific assertion at the hearing, Exhibit 10F,

page 10 (R. 590) is part of Mr. Wentworth's treatment note dated February 16, 2010, which Plaintiff asserts the ALJ improperly ignored. (Pl. Br. 22-23). The invited error doctrine prevents a party from inducing action by a court and later seeking reversal on the ground that the requested action was error. Eateries, Inc. v. J.R. Simplot Co., 346 F.3d 1225, 1229 (10th Cir. 2003); John Zink Co. v. Zink, 241 F.3d 1256, 1259 (10th Cir. 2001). This doctrine has also been applied where the error was invited in administrative proceedings. St. Anthony Hosp. v. Dept. of H.H.S., 309 F.3d 680, 686, 690, 696 (10th Cir. 2002). Plaintiff invited the ALJ to consider Mr. Wentworth's opinion as that of Dr. Peloquin, and therefore may not now argue error in the ALJ's failure to evaluate Mr. Wentworth's opinion separately.

The court finds that Plaintiff has shown no error in the decision at issue.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 20th day of September 2013, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**